■ In the Matter of ALINI BRITO, Respondent, v DENNIS M. WALCOTT, Appellant. [982 NYS2d 105]—

Order and judgment (one paper), Supreme Court, New York County (Alice Schlesinger, J.), entered June 25, 2012, which vacated an opinion and award, dated December 12, 2010, terminating petitioner's employment upon findings of misconduct, and remanded the matter for a new hearing and the imposition of a lesser penalty, unanimously modified, on the law, to reinstate the findings of misconduct, and to vacate the order directing a new hearing, and, as so modified, affirmed, without costs.

Petitioner taught Spanish at James Madison High School

(JMHS) from 2003 until November 20, 2009. On Friday, November 20, 2009, she ate dinner with colleagues and returned to the school later that evening to watch a musical competition in the first floor auditorium, although she was not required to do so. During the performance, petitioner was allegedly observed in an upstairs classroom "partially undressed" (Specification 2) and "engaging in what appeared to be sexually inappropriate behavior with a colleague" (Specification 3). These actions allegedly "caused widespread negative publicity, ridicule and notoriety to [JMHS] and the New York City Department of Education (DOE) when [petitioner's] misconduct was reported in New York area news reports and papers" (Specification 4).

Where, as here, the parties are subjected to compulsory arbitration, the arbitration award must be "in accord with due process and supported by adequate evidence, and must also be rational and satisfy the arbitrary and capricious standards of CPLR article 78" (*Lackow v Department of Educ. [or "Board"] of City of N.Y.*, 51 AD3d 563, 567 [1st Dept 2008]). "A hearing officer's determinations of credibility, however, are largely unreviewable because the hearing officer observed the witnesses and was able to perceive the inflections, the pauses, the glances and gestures—all the nuances of speech and manner that combine to form an impression of either candor or deception" (*id.* at 568 [internal quotation marks omitted]; *see also Cipollaro v New York City Dept. of Educ.*, 83 AD3d 543 [1st Dept 2011]).

Here, Supreme Court erred in substituting its judgment for that of the hearing officer. The hearing officer's findings of misconduct on Specifications 2, 3 and 4 are supported by adequate evidence (*see Lackow*, 51 AD3d at 567). Multiple witnesses gave interlocking and closely corroborating testimony indicating that petitioner engaged in sexual conduct with an adult colleague in a darkened and empty third-floor classroom on November 20, 2009 at about 9:00 p.m., while a student musical performance was under way in an auditorium on the main floor. There is no basis for disturbing the hearing officer's credibility determinations (*see id.* at 568).

Petitioner was accorded a full and fair hearing with notice and an opportunity to be heard (*see Harris v Department of Educ. of the City of N.Y.*, 67 AD3d 492 [1st Dept 2009]). The hearing officer did not violate petitioner's due process rights by declining, in the exercise of her discretion, to order any remedy for respondent's failure to preserve a surveillance videotape of the hallway outside the classroom (*see Matter of Daxor Corp. v State of N.Y. Dept. of Health*, 90 NY2d 89, 98 [1997], *cert denied*

523 US 1074 [1998]). While it would have been better if the tape had been preserved, petitioner's ability to prepare a defense was not hindered by its inadvertent destruction. The camera did not record what occurred in the classroom, and numerous witnesses testified as to what transpired in the hallway. Thus, the hearing officer had a reasonable basis for declining to remedy the spoliation (*see Cuevas v 1738 Assoc., LLC*, 96 AD3d 637, 638 [1st Dept 2012]).

We agree with Supreme Court, however, that the penalty of termination of employment is shockingly disproportionate to petitioner's misconduct (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 234-235 [1974]).

"[A] result is shocking to one's sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals. Additional factors would be the prospect of deterrence of the individual or of others in like situations, and therefore a reasonable prospect of recurrence of derelictions by the individual or persons similarly employed. There is also the element that the sanctions reflect the standards of society to be applied to the offense involved" (*Pell*, 34 NY2d at 234).

Petitioner was present at the school as an audience member and not in any official capacity. The incident involved a consenting adult colleague and was not observed by any student. Before the incident, petitioner, a tenured teacher who had made many positive contributions to the school, had an unblemished disciplinary record, and, moreover, was described by her supervisor as one of the best teachers she had ever worked with (*see Matter of Principe v New York City Dept. of Educ.*, 94 AD3d 431, 433 [1st Dept 2012] [termination disproportionate where petitioner's actions were not premeditated and petitioner had a spotless record as a teacher for five years], *affd* 20 NY3d 963 [2012]; *Matter of Riley v City of New York*, 84 AD3d 442, 442 [1st Dept 2011] [termination disproportionate where "(t)he student admitted that she sustained no physical or emotional injury as a result of the incident, and in the 15 years preceding the incident, petitioner had received not a single formal reproach"]; *Matter of Solis v Department of Educ. of City of N.Y.*, 30 AD3d 532, 532 [2d Dept 2006] [termination disproportionate "(i)n light of, among other things, the petitioner's otherwise unblemished 12-year record as a teacher"]).

While petitioner's behavior demonstrated a lapse in judgment, there is no evidence that this incident, was anything but a one-time mistake (*see Matter of Diefenthaler v Klein*, 27 AD3d 347, 349 [1st Dept 2006] ["we find it shocking to the conscience that these long-standing and well-regarded employees have been terminated for such an isolated error of judgment"]). Of critical significance is that, unlike matters involving some form of romantic involvement or other inappropriate conduct with a student, petitioner's engaging in what appeared to be consensual sexual conduct with an adult colleague is not in and of itself either criminal or otherwise improper. Indeed, lesser penalties have been imposed where a teacher had an ongoing relationship or engaged in inappropriate behavior with a student (*compare City School Dist. of the City of N.Y. v McGraham*, 75 AD3d 445 [1st Dept 2010] [penalty of 90-day suspension without pay and reassignment rather than termination reinstated in light of overall circumstances demonstrating the improbability of teacher engaging in similar inappropriate behavior in the future], *affd* 17 NY3d 917 [2011]; *Matter of Asch v New York City Bd./Dept. of Educ.*, 104 AD3d 415 [1st Dept 2013] [six-month suspension and mandatory counseling constituted an appropriate penalty for a librarian with 20 years of service who over a three-year period had engaged in inappropriate touching of high school students that the hearing officer found was not sexual misconduct]; *Nreu v New York City Dept. of Educ.*, 25 Misc 3d 1209[A], 2009 NY Slip Op 52007[U] [Sup Ct, NY County 2009] [where petitioner, who had unblemished record, was found guilty of repeated inappropriate communications with student, one-year suspension without pay did not shock one's sense of fairness]).

Nor is there is any indication in the record that petitioner's conduct will affect her ability to teach or that she intended to inflict any damage on any student. While it is unfortunate that the incident garnered so much attention and was exploited in the media, that in and of itself does not warrant the penalty of termination (*see Matter of Ellis v Ambach*, 124 AD2d 854 [3d Dept 1986] [two-year suspension for driver education teacher who had been convicted of criminally negligent homicide in connection with a hit-and-run accident that had been widely reported in the press], *lv denied* 69 NY2d 606 [1987]).

Accordingly, we remand the matter to respondent for the imposition of a lesser penalty. Concur—Mazzarelli, J.P., Andrias, DeGrasse, Freedman and Gische, JJ.